STATE, *ex rel.* P. D. FULWOOD, v. SOUTHEASTERN EXPRESS COMPANY.

167 So. 674.
Division B.
Opinion Filed March 30, 1936.
Rehearing Denied May 6, 1936.

---

516

*Hilburn & Merryday,* for Relator;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *John L. Graham, Assistants,* for Respondents.

BUFORD, J.—This case is before us on motion to quash alternative writ of mandamus (proceedings originating in this Court). The command of the alternative writ is:

"Now, therefore, we being willing that full and speedy justice be done in the premises do hereby command you, Southeastern Express Company, a corporation, its agents and servants and particularly its agents and servants at Palatka, Putnam County, Florida, to accept the aforesaid bass for transportation as aforesaid and to transport the same with all convenient dispatch from Palatka, Florida, to Tifton, Georgia, or to show cause before this Court on the 7th day of January, A. D. 1936, why you refuse so to do."

The Relator alleges in effect that he is a citizen of the United States and of the State of Georgia; that he is the holder of a fishing license issued under authority of the State of Florida and that he has lawfully caught and has possession of one fish known as a black bass and is desirous of transporting such black bass from Palatka in Florida to Tifton in Georgia; that he has tendered the said black bass for transportation by express shipment to Southeastern Express Company which is a common carrier engaged in the

transportation and carriage by freight for hire between the points above named, but that such common carrier has refused and continues to refuse to accept said black bass at Palatka for transportation to Tifton, Ga., for and on behalf of Relator because, as it is alleged, the said common carrier is prohibited so to do under the provisions of Chapter 17014, Acts of 1935.

So the question is, "Will mandamus be awarded to require the respondent common carrier to receive for shipment and to transport the said black bass from Palatka in the State of Florida to Tifton in the State of Georgia?"

The title of Chapter 17014, Acts of 1935, is as follows:

"An ACT to Prohibit the Sale, Shipment, Purchase, Barter, or Exchange of Large or Small Mouth Black Bass within the State of Florida, and Providing Penalties for the Violation Thereof."

Section 1 of the Act is as follows:

"Section 1. It shall be unlawful for any person or persons to sell, offer for sale, barter, purchase, offer to purchase, or exchange for merchandise, or to transport for sale or to transport out of the State of Florida, any large or small mouth Black Bass (micropterus dolomieu or micropterus salomides) within the State of Florida; provided that holders of valid fishing license may carry out of the State as personal baggage, or transport one day's bag limit of Black Bass; and provided further that the State Game Commissioner may issue permits for transportation of Black Bass within or out of the State of Florida for propagation or scientific purposes only. No common carrier shall knowingly transport or receive for transportation within the State of Florida any Black Bass. It is the intention of this Act to prohibit within the limits of the State of Florida the sale and shipment of Black Bass, large or small mouth,

whether such bass were caught from the waters within the State of Florida or elsewhere."

The Relator contends that the words, "Provided that holders of valid fishing license may carry out of the State as personal baggage, or transport one day's bag limit of Black Bass," authorize and allow him either to transport the fish himself or to have it transported in his behalf by the common carrier. The common carrier contends that the words, "No common carrier shall knowingly transport or receive for transportation within the State of Florida any Black Bass," make it unlawful for it to receive for shipment or to transport from any point in this State to any point either within or outside the State any fish known as Black Bass, while Relator contends that this prohibition only applies to shipments for transportation entirely within the State.

We hold that the construction placed on the Act by the Respondent is the proper construction. To hold with the theory of the Relator would destroy the intent and purpose of the Act. The daily bag limit of Black Bass is twelve. We know as a matter of common knowledge that five pounds is not too high a figure at which to place the average weight of Black Bass found in Florida waters and, if they should bring, on the markets of Georgia and other States, not more than 15 cents per pound, this would allow the commercial fisherman to individually ship by one common carrier $9.00 worth of Black Bass each day.

There is an ample field of operation for each of the quoted clauses of the statute. Under the first clause, the fisherman having caught his fish may take them along with him whether he goes out of or remains in Florida, but he must *take* them and may not ship them by common carrier and one person may take only one day's bag limit. So thus is precluded the fisherman resorting to the scheme of sev-

eral fishing together, each catching the bag limit and sending the entire lot away by one of the party or by anyone else.

The second clause prohibits the common carrier knowingly receiving for shipment any Black Bass within this State or knowingly transporting any Black Bass within this State. As we construe this clause, it prohibits the transportation of Black Bass by any common carrier, whether the shipment originates in the State or out of the State and whether or not the destination of the shipment originating in the State is in the State or is to a point outside the State.

To prohibit the sale of game fish is well within the police power of the State and this it may do to protect and preserve such fish within the State in the exercise of its police power. The purpose of the statute is to protect the game fish of the State against transportation for commercial purposes and provisions of statutes designed to effectuate such policies and purpose should be made effective unless the statutes so made violate some identified provision of the Constitution. This principle is enunciated in the case of Hoffman v. Powell, *et* al., Receivers for S. A. L. Ry. Co., 118 Fla. 296, 159 Sou. 508.

The effect of this Act and other legislative Acts in *paria materia* is to prohibit any individual having in his possession for transportation or otherwise more than one day's bag limit of Black Bass and to prohibit common carriers receiving for shipment, or transporting any shipment of Black Bass for delivery at any point in this State or for delivery at any point outside the State, and to prohibit common carriers transporting in this State any Black Bass shipped from outside the State; and by the enforcement of these provisions to make it at least impracticable for any person or persons to engage in the catching of Black Bass in the State of Florida for commercial purposes or to conceal the

possession of Black Bass caught in this State for commercial purposes by the coincident possession of Black Bass caught outside the State of Florida.

The alternative writ should be quashed.

It is so ordered.

WHITFIELD, C. J., and TERRELL and BROWN, J. J., concur.

DAVIS, J. (dissenting in part).—I concur in much that is said, but dissent from the result reached in this particular case.

I think the language of the statute "provided that holders of valid fishing license may carry out of the State as personal baggage, *or transport one day's bag limit of black bass*" confers a special privliege upon the licensee holder of a fishing license that entitles such holder to use the facilities of any medium of transportation that he may desire, in order to "transport" his permissible one day's bag limit *to himself as the consignee of the shipment.*

In this case the significant fact is that the relator is shown to be both the shipper and the consignee. In other words, as the holder of a valid fishing license he is applying for leave to ship the fish he has caught *to himself* at Tifton, Georgia, not to some stranger or other person there. I agree that, with the above exception, the statute prohibits common carriers from receiving for shipment black bass. But I do not think the prohibition extends to a fisherman holder of a valid fishing license who merely wants to ship a fish *to himself* as consignee instead of rolling it across the State line in a wheelbarrow, or acting as its personal attendant on a passenger train.